2026 IL App (4th) 251074-U

NOS. 4-25-1074, 4-25-1075, 4-25-1076, 4-25-1077, 4-25-1078, 4-25-1079, 4-25-1080 cons.

<table>
<tr><td>
NOTICE<br>
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).
</td><td>
IN THE APPELLATE COURT<br><br>
OF ILLINOIS<br><br>
FOURTH DISTRICT
</td><td>
FILED<br>
March 24, 2026<br>
Carla Bender<br>
4th District Appellate<br>
Court, IL
</td></tr>
</table>

| | | |
|---|---|---|
| *In re* A.C., C.W., D.W., E.W., F.W., A.W., and Aereo. W., Minors | ) ) ) | Appeal from the Circuit Court of Peoria County |
| (The People of the State of Illinois, Petitioner-Appellee, v. Travis W., Respondent-Appellant). | ) ) ) ) ) ) ) ) ) ) ) ) ) | Nos. 24JA81 24JA82 24JA83 24JA84 24JA85 24JA86 24JA87 Honorable David A. Brown, Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Justices DeArmond and Grischow concurred in the judgment.

**ORDER**

¶ 1     *Held*: The appellate court affirmed the trial court's order terminating wardship and case closure for two of the minors, finding it was not against the manifest weight of the evidence. The appellate court dismissed the remainder of appellant's contentions on appeal for lack of jurisdiction.

¶ 2     In May 2024, the State filed separate neglect petitions for A.C. (born in November 2008), C.W. (born in February 2015), D.W. (born in August 2017), E.W. (born in September 2018), F.W. (born in February 2022), A.W. (born in September 2009), and Aereo. W. (born in October 2011). In August 2024, the trial court adjudicated the minors neglected and entered a dispositional order making them wards of the court. Following a permanency review hearing in

September 2025, the court entered an order terminating wardship and closing the cases for A.W. and Aereo. W. after finding the permanency goal had been achieved. The court also entered an order setting the permanency goal for A.C. for independence and the permanency goals of return home for the remainder of the minors. On appeal, respondent challenges the court's permanency orders from March and September 2025. We affirm the court's termination of wardship and case closure for A.W. and Aereo. W. We dismiss the remainder of respondent's appeal for lack of jurisdiction.

¶ 3                     I. BACKGROUND

¶ 4        In May 2024, the State filed separate neglect petitions for the minors pursuant to section 2-3(1)(b) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1)(b) (West 2024)), contending the minors' environment was injurious to their welfare. The petitions alleged, *inter alia*, respondent had a history of substance abuse and domestic violence. The trial court entered a temporary shelter care order, placing the minors in the custody of the Illinois Department of Children and Family Services (DCFS). The order noted the parties did not object to the minors being placed in shelter care.

¶ 5        On August 22, 2024, the trial court entered an order finding respondent had partially stipulated to evidence from the neglect petition. Additionally, the court denied respondent's request for a continuance, finding there had been no delay in providing him with discovery. On September 17, 2024, the court entered an order finding respondent had partially stipulated to additional evidence. On October 30, 2024, the court entered an adjudicatory order, finding the minors neglected based on the contents of the State's neglect petition, stipulation, and proffer. The court also entered a dispositional order, finding respondent unfit for reasons other than financial circumstance alone to care for the minors. The minors were made wards of the court and custody

and guardianship was placed with DCFS. Respondent was ordered to cooperate with all directives from DCFS. The dispositional order indicated respondent moved for "protective supervision" and to have the minors returned to his care under "court supervision," which the court denied.

¶ 6       On February 4, 2025, the trial court entered an order dismissing respondent's motion to hold DCFS in contempt regarding issues facilitating his visitation with the minors for failing to exhaust his administrative remedies.

¶ 7       Following a permanency review hearing held on March 19, 2025, the trial court entered a written order finding DCFS had made reasonable efforts and that respondent had made mixed efforts. The permanency goal for A.C. was set at independence, while the rest of the minors' permanency goal remained return home within one year. The court continued to find respondent unfit.

¶ 8       Following a permanency review hearing held on September 3, 2025, the trial court entered a written order finding DCFS had made reasonable efforts. A.C.'s permanency goal remained independence. The court closed the cases for A.W. and Aereo W. finding permanency had been achieved in their reunification with their mother, Charriott C. who is not a party to this appeal. Charriott C. was named their sole guardian. The permanency goal for the remaining minors was changed to return home within five months. Respondent remained unfit. The matter was scheduled for a permanency review, which was set for December 10, 2025.

¶ 9       On September 25, 2025, respondent filed a notice of appeal regarding the trial court's orders entered on March 19 and September 3, 2025, with respect to all of the minors.

¶ 10      On October 17, 2025, this court dismissed respondent's appeals for failing to file the docketing statement by October 9, 2025.

¶ 11      On November 13, 2025, we granted respondent's motion to reinstate the appeals

and consolidated the appeals pertaining to A.C., C.W., D.W., E.W., and F.W. We subsequently consolidated the appeals pertaining to A.W. and Aereo. W. on December 16, 2025.

¶ 12 On January 23, 2026, we dismissed the appeal for want of prosecution after respondent failed to file his brief in this matter by January 20, 2026. Respondent subsequently filed his brief, and we granted his motion to reinstate the appeal on January 27, 2026.

¶ 13 This appeal followed.

¶ 14 II. ANALYSIS

¶ 15 We begin by noting this case is an accelerated appeal under Illinois Supreme Court Rule 311(a) (eff. July 1, 2018). Accordingly, this court is required to issue its decision within 150 days after the filing of the notice of appeal unless there has been good cause shown. Ill. S. Ct. R. 311(a)(5) (eff. July 1, 2018). Here, the notice of appeal was filed on September 25, 2025. Thus, we were required to issue a decision by February 23, 2026. However, due to respondent's failures to comply with filing deadlines for the docketing statement and his brief on appeal, this case was not submitted for our review until February 20, 2026. Therefore, we find there is good cause for issuing our decision after the 150-day deadline.

¶ 16 On appeal, respondent challenges the trial court's orders from March 19, 2025, and September 3, 2025, contending (1) the court's finding of a lack of reasonable progress was contrary to the manifest weight of the evidence, (2) DCFS failed to satisfy reasonable efforts obligations under state and federal law, (3) his due process rights were violated because DCFS's characterization of his behavior was unsupported by the record and unrelated to the original grounds for removal, (4) closing the minors' cases was arbitrary and not in their best interest, (5) the court abused its discretion by continuing an order of protection and restrictions unsupported by the evidence, and (6) the State breached its statutory and constitutional duty to protect the

- 4 -

minors when hospitalizations and allegations of abuse occurred while the minors were in state-supervised placement.

¶ 17        The State contends this court lacks jurisdiction to consider challenges to the trial court's March 19 order because it was not a final judgment. Moreover, the State argues that even if the March 19 order were considered a final judgment, respondent failed to timely appeal the judgment. The State also argues this court lacks jurisdiction to consider the challenges to the court's September 3 order as it pertained to A.C., C.W., D.W., E.W., and F.W. because the order was not a final judgment. The State concedes there is jurisdiction to consider claims pertaining to A.W. and Aereo. W. because the September 3 order closing their cases was a final, appealable order and respondent's notice of appeal was timely.

¶ 18        Respondent did not file a reply to the State's brief. His opening brief simply asserts, without explanation, we have jurisdiction to consider his arguments pursuant to Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994) and Illinois Supreme Court Rule 303(a) (eff. July 1, 2017).

¶ 19        Rule 301 provides final judgments in civil cases are appealable as a matter of right. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994). Rule 303(a) provides procedural guidance to appeal final judgments in civil cases. Ill. S. Ct. R. 303(a) (eff. July 1, 2017). Neglect proceedings pursuant to the Juvenile Court Act are civil actions meant to serve the best interest of the minor. *In re J.J.*, 142 Ill. 2d 1, 8 (1991). While respondent correctly identifies the civil nature of the proceedings, his brief fails to explain how the trial court's orders from March 19 and September 3 should be construed as final judgments for purposes of appellate jurisdiction.

¶ 20        Generally, permanency orders are "interlocutory, nonfinal orders, not subject to an appeal as of right." *In re Faith B.*, 216 Ill. 2d 1, 16 (2005). Permanency orders are nonfinal because they are not fixed determinations, but rather, are subject to statutory reevaluation every six months

(or sooner) and amenable to revisions until the permanency goal is achieved. *Id.* (citing 705 ILCS 405/2-28(2) (West 1998)). A permanency order may be considered final, however, where a permanency goal has been reached. *Id.* at 17-18; see *In re K.C.*, 2024 IL App (1st) 231166, ¶ 107. In this case, the permanency orders for all of the minors except for A.W. and Aereo. W. were nonfinal. That is, the permanency goals for the minors had not been achieved and the trial court had scheduled their respective cases for review at a future permanency hearing. See *id.* ¶ 114 (noting the scheduling of another permanency hearing as further indicia of a nonfinal order). Because the permanency orders regarding A.C., C.W., D.W., E.W., and F.W. were not final judgments, we agree with the State and find we lack jurisdiction to address any claims pertaining to these minors. Therefore, respondent's claims pertaining to A.C., C.W., D.W., E.W., and F.W. are dismissed for lack of jurisdiction.

¶ 21        As we just noted, the achievement of a permanency goal may constitute a final judgment. *Id.* ¶ 107. The trial court's closure of the cases for A.W. and Aereo. W. was intended to be a final and permanent order. Accordingly, we also agree with the State that we have jurisdiction to review any claims pertaining to their case closure.

¶ 22        Before we address the merits of respondent's argument pertaining to A.W. and Aereo. W., the State requests we dismiss respondent's appeal for violating Illinois Supreme Court Rule 341 (eff. Oct. 1, 2020). The State argues, and we agree, that respondent's brief fails to substantially comply with Rule 341(h).

¶ 23        Compliance with Rule 341 is not a mere suggestion, and it is within this court's discretion to strike an appellant's brief and dismiss the appeal entirely for failing to comply. *Niewold v. Fry*, 306 Ill. App. 3d 735, 737 (1999). However, if the violations of supreme court rules do not "hinder or preclude our review," the brief need not be stricken in whole or in part. (Internal

quotation marks omitted.) *Gaston v. City of Danville*, 393 Ill. App. 3d 591, 601 (2009).

¶ 24    Respondent's brief undoubtedly fails to comply with the provisions of Rule 341(h). Specifically, respondent's brief (1) lacks a "Points and Authorities" section, (2) appears to implicate constitutional and statutory provisions but lacks a "Statutes Involved" section, (3) contains no citations to the record in the "Statement of Facts" section but does contain argument, and (4) contains no citations to the record and inadequate citations to authority relied upon in the "Argument" section. See Ill. S. Ct. R. 341(h)(1), (5), (6), (7) (eff. Oct. 1, 2020). Additionally, we note respondent's brief fails to comply with Rules 341(a), (c), and (d). Ill. S. Ct. R. 341(a), (c), (d) (eff. Oct. 1, 2020). Respondent's *pro se* status does not relieve him of his obligations to comply with our supreme court's rules. See *Gillard v. Northwestern Memorial Hospital*, 2019 IL App (1st) 182348, ¶ 45 ("A *pro se* litigant must comply with the rules of procedure required of attorneys, and a court will not apply a more lenient standard to *pro se* litigants.").

¶ 25    Respondent's aforementioned failures to comply with Rule 341 would provide a sufficient basis for this court to strike his brief and dismiss the appeal. As a reviewing court, we are

> "entitled to have the issues clearly defined and supported by pertinent authority and cohesive arguments; [the appellate court] is not merely a repository into which an appellant may 'dump the burden of argument and research,' nor is it the obligation of this court to act as an advocate or seek error in the record." *U.S. Bank v. Lindsey*, 397 Ill. App. 3d 437, 459 (2009) (quoting *Obert v. Saville*, 253 Ill. App. 3d 677, 682 (1993)).

However, as we previously explained, a vast majority of respondent's contentions on appeal have already been dismissed for a lack of jurisdiction. Accordingly, the only surviving issue on appeal is the trial court's termination of wardship and closure of the cases involving A.W. and Aereo. W. Respondent's failure to comply with Rule 341 does not hinder or preclude our review of this narrow issue. Therefore, we decline the State's invitation to dismiss the remainder of respondent's appeal for failing to comply with Rule 341.

¶ 26       "[C]ases involving allegations of neglect and adjudication of wardship are *sui generis*, and must be decided on the basis of their unique circumstances." *In re Arthur H.*, 212 Ill. 2d 441, 463 (2004). We review a trial court's determination to terminate wardship "under the manifest-weight-of-the-evidence standard when the court's weighing of facts is at issue; otherwise, it is reviewed for abuse of discretion." (Internal quotation marks omitted.) *In re D.V.*, 2024 IL App (4th) 240751, ¶ 52. A finding is against the manifest weight of the evidence when the opposite result is clearly evident. *In re Audrey B.*, 2015 IL App (1st) 142909, ¶ 32.

¶ 27       The termination of wardship and closing of a case is warranted where the "health, safety, and the best interests of the minor and the public no longer require the wardship of the court." 705 ILCS 405/2-31(2) (West 2024). When determining the best interest of the minor, the court must consider the following factors, "in the context of the child's age and developmental needs:

(a) the physical safety and welfare of the child, including food, shelter, health, and clothing;

(b) the development of the child's identity;

(c) the child's background and ties, including familial, cultural, and religious;

(d) the child's sense of attachments, including:

(i) where the child actually feels love, attachment, and a sense of being valued (as opposed to where adults believe the child should feel such love, attachment, and a sense of being valued);

(ii) the child's sense of security;

(iii) the child's sense of familiarity;

(iv) continuity of affection for the child;

(v) the least disruptive placement alternative for the child;

(e) the child's wishes and long-term goals ***;

(f) the child's community ties, including church, school, and friends;

(g) the child's need for permanence which includes the child's need for stability and continuity of relationships with parent figures, siblings, and other relatives;

(h) the uniqueness of every family and child;

(i) the risks attendant to entering and being in substitute care; and

(j) the preferences of the persons available to care for the child." *Id.* § 1-3(4.05).

¶ 28     Respondent's argument as it pertains to A.W. and Aereo. W. is the trial court failed to ensure their safety before closing their cases, thereby making the court's decision arbitrary and

not in the minors' best interest. Specifically, he contends there were no "enforceable safety plans or adequate monitoring" of the minors following case closure and the minors' mother "had active legal matters pending in another county that were not fully investigated by the trial court prior to closure." Additionally, he argues the court failed to ensure continuity of "medical/therapeutic care" for the minors. He cites generally and without explanation *In re Austin W.*, 214 Ill. 2d 31 (2005), a decision which was abrogated by *In re M.M.*, 2016 IL 119932, in support.

¶ 29    Because respondent has failed to explain the relevance of *Austin*, this court can only speculate as to its relevance here. *Austin* involved a minor who had been adjudicated abused and made a ward of the court, with custody and guardianship placed with DCFS. *Id.* at 35-36. The minor was placed with his maternal grandfather and stepgrandmother, where his sisters had also been living. *Id.* at 35. Following an investigation into suspicious injuries to the minor, DCFS removed the minor from his grandparents' care, placed him in foster care, and issued a report that indicated credible evidence he had been abused while under his grandparents' care. *Id.* at 36-39. An administrative law judge (ALJ) issued a written recommendation and opinion, finding the evidence supported DCFS's finding the minor had been abused. *Id.* at 40-41. After the ALJ's recommendation but before the director of DCFS adopted the recommendation, the minor's guardian *ad litem* (GAL) filed a petition with the trial court seeking to have custody and guardianship placed with the minor's grandparents. *Id.* at 41. The trial court acknowledged the ALJ's recommendation but disagreed with his findings. *Id.* at 41-42. The court found it was in the minor's best interest to terminate its wardship and grant guardianship and custody to the minor's grandparents. *Id.* at 42. The appellate court affirmed. *Id.*

¶ 30    Our supreme court reviewed the trial court's best interest determination under the manifest-weight-of-the-evidence standard. *Id.* at 49. The *Austin* court concluded the trial court

erred when it "reassessed the credibility of the witnesses who appeared before the ALJ and substituted its own determination regarding the indicated report against the [grandparents] for that of the ALJ." *Id.* at 56-57. The court also found the trial court's best interest determination was against the manifest weight of the evidence, noting the best interest factors supported the minor's placement in foster care. *Id.* at 50-60.

¶ 31     The State argues the trial court's order closing the cases for A.W. and Aereo. W. was not against the manifest weight of the evidence. The State notes the court's findings were based on the minors' mother being found fit and the court's determination the health, safety, and best interest of the minors and the public no longer required the court's wardship. The State also argues respondent's contentions on appeal do not challenge the trial court's best interest findings; rather, respondent contends—without citation to authority—the trial court was required to impose additional restrictions or monitoring of the minors, despite their cases being closed.

¶ 32     We agree with the State. While respondent mentions the phrase "best interests" in his argument, he never elucidates how the trial court's decision was contrary to the best interest factors we recited above. See *Insurance Benefit Group, Inc. v. Guarantee Trust Life Insurance Co.*, 2017 IL App (1st) 162808, ¶ 44 (noting the appellant bears the burden of persuasion as to his or her claims of error). "The [trial] court is presumed to know the law and apply it properly, absent an affirmative showing to the contrary in the record." *In re N.B.*, 191 Ill. 2d 338, 345 (2000). Respondent does not cite the record in an effort to affirmatively show the court erred when terminating wardship and closing the minors' cases. We note, our review of the record showed both DCFS and the minors' GAL recommended the court terminate wardship and close the minors' cases. We find respondent has failed to show the court's termination of wardship and closing of the cases for A.W. and Aereo. W. was against the manifest weight of the evidence.

¶ 33 Instead, respondent argues the trial court erred by failing to implement "enforceable safety plans or adequate monitoring" and ensuring continuity of "medical/therapeutic care" for the minors. Assuming, *arguendo*, the trial court had the authority to implement the conditions respondent seeks, it would come from the court's statutory authority to impose dispositional orders. See 705 ILCS 405/2-23 (West 2024). This court, in *In re M.H.*, 2025 IL App (4th) 250271, ¶ 35, previously held that where a court terminates wardship and closes a case, it no longer has authority to impose orders consistent with its authority under section 2-23 of the Juvenile Court Act. Accordingly, when the trial court closed the minors' cases and terminated wardship, it no longer had the authority to enter a dispositional order imposing the conditions respondent contends it erroneously failed to impose. Therefore, we conclude the remedy respondent seeks is simply unavailable at law.

¶ 34                                      III. CONCLUSION

¶ 35 For the reasons stated, we affirm the trial court's judgment as it pertains to terminating wardship and closing the cases of A.W. and Aereo. W. We dismiss the appeal in all other respects for lack of jurisdiction.

¶ 36 Affirmed in part and dismissed in part.