(No. 40995.-■■■■■■)

CLEM STEIN, JR., *et al.*, Appellees, *vs.* THE COUNTY BOARD OF SCHOOL TRUSTEES OF DU PAGE COUNTY *et al.*, Appellants.

*Opinion filed September 24, 1968.*

Norman, Engelhardt, Franke & Lauritzen, of Chicago, and Alan Hultman, of Downers Grove, for appellants.

Ancel, Stonesifer, Glink & Levin, of Chicago, (Louis Ancel and Ronald M. Glink, of counsel,) for appellees.

Mr. Justice House delivered the opinion of the court:

Plaintiffs petitioned the defendant County Board for detachment of certain territory from an elementary school district and a high school district, and for its annexation to another adjoining elementary district and another high school district. The County Board held that the petition was not signed by two thirds of the legal voters residing in the territory as required by the School Code. Upon administrative review the trial court affirmed the decision of the County Board and the Appellate Court, Second District, reversed. (85 Ill. App. 2d 251.) We granted leave to appeal.

The facts are fully set out in the opinion of the appellate court, and only so much of the factual situation will be repeated as is necessary to an understanding of the case.

The sufficiency of the petition filed on June 9, 1965, depends upon the residence of one voter, Nancy Kolby. She was not one of the 19 who signed the petition. The County Board included her as a resident of the territory and, by so doing found a total of 29 residents. Thus, it held on rehearing that the petition was signed by fewer than two thirds of the legal voters. If she was not a resident, the total would have been 28 voters of which 19 would constitute more than two thirds, and the County Board would have jurisdiction.

Nancy lived with her parents in the territory sought to be detached and annexed. Their home was destroyed by fire on January 29, 1965, and they all moved to a hotel outside the territory while the home was being rebuilt. Nancy was engaged at that time and her wedding date was later set for June 26, 1965. She and her fiance leased premises outside the territory and signed a lease on May 11, the term of which began June 1. On or about that date she began moving personal effects and furniture into their new apartment. They were married on the date fixed and took up full residence in the rented premises.

This court has repeatedly held that domicile does not necessarily mean the same as residence for voting purposes. (*Dorsey* v. *Brigham,* 177 Ill. 250; *Park* v. *Hood,* 374 Ill. 36; *Clark* v. *Quick,* 377 Ill. 424.) One must have a domicile and does not lose it until another has been acquired, but the same is not true of residence. The legislature may prescribe reasonable conditions upon the right to vote, including residency (*Clark* v. *Quick,* 377 Ill. 424; 25 Am. Jur. 2d, Domicile, sec. 4), and upon abandonment of residence the right to vote may be lost until a new residence has been established for the length of time fixed by statute. As was said in the landmark case of *Kreitz* v. *Behrensmeyer,* 125 Ill. 141, 195: "We have frequently held, that when a party leaves his residence, or acquires a new one, it is the intention with which he does so that is to control. Hence the shortest

absence, if at the time intended as a permanent abandonment, is sufficient, although the party may soon afterwards change his intention; while, on the other hand, an absence for months, or even years, if all the while intended as a mere temporary absence for some temporary purpose, to be followed by a resumption of the former residence, will not be an abandonment." It follows that once there is an abandonment, and the intention not to return is later conceived, residence is lost.

Intent is gathered primarily from the acts of a person. As pointed out in the *Kreitz* case, declarations are admissible "although less weight is given to the party's declarations than to his acts." (125 Ill. 141, 196.) Here, Nancy had left the territory while her wedding was impending. After the date was fixed, she joined her husband in the execution of a lease upon their new home and began furnishing it. These acts certainly indicate an intention not to return to her parents rebuilt home upon its completion in the fall. The argument that if her prospective husband had died or the engagement been broken she would have returned to live with her parents is not impressive. True, she might have done so, but that would have been a change of intention rather than a conditional intention to abandon her parents' home. In the very nature of things, a bride can hardly be expected to approach marriage with such reservations. There is no indication here that Nancy harbored any doubts.

We are of the opinion that there was an abandonment of residence followed by an intent not to return. We find no error in the judgment of the Appellate Court, Second District, and it is affirmed.

*Judgment affirmed.*