DONNA SULLIVAN *et al.*, Petitioners, *v.* BONNIE SULLIVAN *et al.*, Respondents.—(Alan C. Downen, State's Attorney of Hamilton County, Appellant, *v.* Donna Sullivan *et al.*, Appellees.)

Fifth District   No. 81—363

Opinion filed November 8, 1982.

Alan C. Downen, State's Attorney, of McLeansboro (Martin N. Ashley and Frank J. Bieszczat, both of State's Attorneys Appellate Service Commission, of counsel), for appellant.

James E. Ford, of Benton, for appellee James E. Ford.

Van Winkle & Van Winkle, of McLeansboro, for appellees Donna and Jerrel Sullivan.

JUSTICE WELCH delivered the opinion of the court:

The State appeals from an order of the circuit court of Hamilton County directing the county to pay $2,375 for the services of a guardian *ad litem* appointed by the court to represent minors at an adjudicatory hearing. The State first contends that the trial court's order was void because the court lacked jurisdiction, and, second, that the court acted beyond its constitutional powers and was therefore not authorized to order the county to pay legal fees resulting from that action. We will first review the juvenile custody dispute which preceded the court's order requiring the payment of legal fees.

Petitioners Donna and Jerrel Sullivan, residents of White County, are the paternal grandparents of Stacey and Shawn Sullivan, and Bonnie Sullivan is their natural mother. Their father died in 1979 after an automobile accident. The grandparents first sought custody of

the children through a petition filed on February 2, 1980, in the circuit court of Hamilton County. That petition stated that, at that time, the children were residing in Hamilton County. This original petition was dismissed on June 10, 1980, and an amended petition was filed on June 25, 1980, stating that the children lived in Pope County, Illinois. The amended petition was dismissed on September 23, 1980.

A second amended petition containing five counts was filed on October 10, 1980. In each of the counts, it was alleged that the children and their mother resided in Pope County. Three of the five counts were dismissed by the trial court, and a hearing was scheduled for remaining counts I and IV on March 12, 1981. Count I alleged that the children were neglected minors and were living in an environment injurious to their health. It requested that the minors be declared wards of the court pursuant to the Juvenile Court Act. Count IV sought the court's appointment of the grandparents as guardians of the children's estates. At the outset of the March 12 hearing, counsel for the petitioners informed the court that the children then resided in Elgin, Kane County, Illinois. However, counsel for respondent Bonnie Sullivan stated that the children were currently staying with family in Hamilton County and were available to appear in court if necessary.

During the proceedings, respondents' counsel requested that the State's Attorney for Hamilton County be made a party to the proceedings. The court initially expressed reservations about the matter because the children did not reside in Hamilton County; but then concluded that the Juvenile Court Act required that the State be a party to the action. Hamilton County State's Attorney, Alan Downen, was brought into the courtroom and ordered to become a party to the proceeding. The adjudicatory hearing was then continued to a later date.

When the hearing resumed on March 16, 1981, Downen moved that the entire petition be dismissed. He argued that the Juvenile Court Act designated the State's Attorney as the only person who could prosecute a petition under the Act. Moreover, he asserted that since none of the parties lived in Hamilton County when the second amended petition was filed, the court did not have jurisdiction over the subject matter of the petition and the People of Hamilton County did not have an interest in the action. Accordingly, he stated, he intended to exercise his prosecutorial discretion and dismiss the case.

The trial court found that it had jurisdiction since the children and their mother had lived in the county when the original petition had been filed in February 1980. The court also rejected the State's Attorney's assertion of prosecutorial discretion, stating that the court has a duty to protect minors.

At this point, the State's Attorney announced that he would not proceed with the case, or even remain in the courtroom. The court then ordered Downen to be present. The trial judge stated that if the State's Attorney refused to remain in the courtroom, he would have the sheriff compel his attendance. When Downen failed to return after a 10-minute recess, the judge directed a sheriff's deputy to bring him into court. In court, Downen stated for the record that he was present under duress and would neither present evidence nor participate in the proceedings. The next day the trial court refused to reconsider its denial of the State's motion to dismiss. The court decided not to require the State's Attorney's physical presence in the courtroom, although he still remained a party to the proceedings.

On July 16, 1981, a hearing was held on a petition for $5,050 in legal fees submitted by James Ford, the court-appointed guardian *ad litem*. The State's Attorney argued that the State should not have been involved in the case in the first place, and therefore, the trial court lacked the authority to order Hamilton County to pay for a court-appointed guardian *ad litem*. However, the court ordered respondent Bonnie Sullivan to pay $150 in guardian *ad litem* fees, Hamilton County to pay $2,375, and petitioners Donna and Jerrel Sullivan to pay $2,525.

The State first argues that the order requiring payment of legal fees is void because the court was totally lacking jurisdiction in the case in the absence of compliance with the statutory venue rules of the Juvenile Court Act. The State asserts that the Juvenile Court Act allows proceedings only in the county of the minor's residence, and therefore, proceedings in any county other than the minor's residence are void for lack of jurisdiction. We must reject the State's position for three reasons, which will be explained in turn.

First, the county of the minors' residence is not the only county where venue is proper under the Juvenile Court Act. Under section 2—6(1) of the Act, proper venue "lies in the county where the minor resides or is found." (Ill. Rev. Stat. 1981, ch. 37, par. 702—6(1).) The second paragraph of the venue section provides that "[i]f proceedings are commenced in any county other than that of the minor's residence, the court in which the proceedings were initiated *may* at any time before or after adjudication of wardship transfer the case to the minor's residence ***." (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 37, par. 702—6(2).) Since the statute expressly provides for venue in the county where the minor "is found" and permits transfer at the court's discretion to the county of residence, the State's reading of the venue requirement hardly seems tenable. Ill. Rev. Stat. 1981, ch.

37, par. 702—6(1), (2).

The single case authority cited by the State in support of its argument that venue is appropriate only in the county of the minor's residence is *In re R.D.H.* (1979), 68 Ill. App. 3d 299, 385 N.E.2d 922. In that case, a minor residing in McLean County, who had previously been made a ward of the court in Champaign County, was charged in McLean County with committing a delinquent act in that county. After the minor was placed in the Champaign County Detention Center, the circuit court in Champaign County permitted the State's Attorney of that county to file an amended petition alleging the same delinquent acts set forth in the McLean County petition. After being adjudicated a delinquent, he was committed to the Department of Corrections. On appeal, the court held that the minor's statutory right to venue was violated by the supplemental petition since no facts showed that the minor resided in Champaign County, or became a resident while in custody there. The reviewing court did not discuss the significance of the "resides or is found" venue language of section 2—6(1). In addition, the court also failed to explain the significance of the transfer of venue procedure set forth in section 2—6(2) (Ill. Rev. Stat. 1977, ch. 37, par. 702—6(2)). Although these two seemingly applicable portions of the venue section of the Juvenile Court Act were not considered, the *R.D.H.* majority held that the failure to establish that the minor resided in Champaign County required reversal of the trial court's adjudicatory and dispositional orders.

It is well settled that, in construing a statute, the language should be given its plain and ordinary meaning. (*City of East Peoria v. Group Five Development Co.* (1981), 87 Ill. 2d 42, 429 N.E.2d 492.) Further, a "statute should be construed, if possible, so that no word, clause or sentence is rendered meaningless or superfluous." (*City of Mount Carmel v. Partee* (1979), 74 Ill. 2d 371, 376, 385 N.E.2d 687, 689; *People ex rel. Barrett v. Barrett* (1964), 31 Ill. 2d 360, 364-65, 201 N.E.2d 849, 851.) The dissent in *R.D.H.* is much more faithful to the language of the Juvenile Court Act's venue requirement. It was noted in that dissent that since the Act expressly designates a procedure for a transfer of venue in paragraph 2—6(2), it is reasonable to conclude that once venue is established it continues until the venue transfer procedure is followed. (*In re R.D.H.* (1979), 68 Ill. App. 3d 299, 302-03, 385 N.E.2d 922 (Trapp, J., dissenting).) That procedure would be a nullity under the holding of the majority.

In the instant case, the minors did reside in Hamilton County when the original petition was filed. Venue was not defeated by their subsequent move to another county since the trial court never trans-

ferred venue to the county of the minor's residence. (Ill. Rev. Stat. 1981, ch. 37, par. 702—6(2).) In addition, at the outset of the hearing on March 12, 1981, counsel for the respondents informed the court that the minors were staying with family in Hamilton County and were available to appear in court if necessary. Therefore, the minors could also be "found" in Hamilton County, and venue was established in that manner. (Ill. Rev. Stat. 1981, ch. 37, par. 702—6(1).) Accordingly, the record shows that venue was proper under either of two different theories. This determination is consistent with the court's statement in *In re Gonzales* (1974), 25 Ill. App. 3d 136, 143, 323 N.E.2d 42, 47, that "the legal residence of the child does not technically affect the jurisdiction of the court, so long as the child is physically present within the State."

■ The second flaw in the State's argument is that even if venue had been improper, the defect would not have deprived the court of jurisdiction. The Illinois Supreme Court has stated that neglect proceedings "may appropriately be labelled 'civil' proceedings both in the legal and lay sense of the word." (*In re Urbasek* (1967), 38 Ill. 2d 535, 543, 232 N.E.2d 716, 720; see also *People v. Davis* (1973), 11 Ill. App. 3d 775, 298 N.E.2d 350.) Thus, section 8—1 of the Civil Practice Act, now section 2—104 of the Code of Civil Procedure, effective July 1, 1982, further supports the trial court's order. That section states:

"No order or judgment is void because rendered in the wrong venue ***. No action shall abate or be dismissed because commenced in the wrong venue if there is a proper venue to which the cause may be transferred." (Ill. Rev. Stat. 1981, ch. 110, par. 2—104.)

Consequently, improper venue could not have deprived the court of jurisdiction and therefore the order requiring payment of attorney fees may not be challenged as void on jurisdictional grounds.

■ The final reason that the State's jurisdiction argument is without merit is that objections to venue are waived in the absence of a timely motion to transfer. The State's Attorney of Hamilton County never objected to venue at the trial level and never presented an appropriate motion for change of venue. (Ill. Rev. Stat. 1981, ch. 37, par. 702—6(2).) Instead, he sought to dismiss the entire action. By his failure to invoke the procedure for transfer of venue, the State's Attorney waived any objection to venue which he otherwise might have had. *Cf.* Ill. Rev. Stat. 1981, ch. 110, par. 2—104, formerly Ill. Rev. Stat. 1979, ch. 110, par. 8—1; *Nemanich v. Dollar Rent-A-Car Services, Inc.* (1980), 90 Ill. App. 3d 484, 413 N.E.2d 178 (although the statute and case law speak of waiver of improper venue by "a defend-

ant," the rule is sufficiently analogous to support a finding of waiver in the case at bar in light of the Juvenile Court Act's explicit venue transfer procedure).

In sum, the State has not established that venue was improper in the instant case since the minors both resided in Hamilton County when the original petition was filed and could be found there at the time of the second amended petition. Moreover, the Illinois Code of Civil Procedure provides that venue is not jurisdictional in civil cases and any venue objection must be deemed waived in the absence of a timely objection and motion to transfer. Finally,. the logic of these rules under the facts of the case at bar is evident. If we were to accept the State's argument, respondents in any neglect proceeding could void any juvenile court order simply by moving the minors from the county in which the petition was filed at any time during the course of the proceedings. We cannot allow any such interpretation of the Juvenile Court Act. Accordingly, the State's argument that the trial court was without jurisdiction must fail.

The State's second argument is that the trial court acted beyond its constitutional powers by ordering the State's Attorney to prosecute a Juvenile Court Act petition. The Illinois Supreme Court has recently decided this issue in a manner adverse to the State's position. (*People ex rel. Davis v. Vasquez* (1982), 92 Ill. 2d 132.) In *Vasquez,* the juvenile court sought to have a minor adjudicated a ward of the court under the belief that this was necessary to obtain special educational services for her. Toward that end, the court ordered the State's Attorney to file a neglect petition on the minor's behalf. The State's Attorney subsequently argued that the order was void as violative of the constitutional doctrine of separation of powers (Ill. Const. 1970, art. II, sec. 1).

The supreme court rejected this argument, holding that the decision to file a juvenile petition is unlike the decision whether to initiate a criminal prosecution. Any responsible adult with knowledge of the circumstances may file a petition alleging a minor to be delinquent, dependent, neglected, or a minor in need of supervision (Ill. Rev. Stat. 1981, ch. 37, par. 704—1(1)), in order to provide minors increased access to the services of the juvenile court. The person filing the petition is merely an agent of the court and the court does not exceed its constitutional powers merely by directing the filing of a petition concerning a minor through the office of a State's Attorney. *People ex rel. Davis v. Vasquez.*

Finding the *Vasquez* decision to be directly on point, we must reject the State's second argument that the trial court violated its con-

stitutional powers by ordering the Hamilton County State's Attorney to pursue a petition under the Juvenile Court Act. Since the juvenile court neither lacked jurisdiction nor exceeded its constitutional authority in pursuing the neglect petition in the case at bar, we cannot conclude that the court's order pertaining to legal fees in connection with that petition was void. The circuit court of Hamilton County was therefore authorized to direct the county to pay $2,375 for the services of the guardian *ad litem* on that petition. We affirm the order of the circuit court of Hamilton County which orders the county to pay those guardian *ad litem* fees.

Affirmed.

KASSERMAN and HARRISON, JJ., concur.